UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
KENNETH KAMHOLTZ,

                              Plaintiff,            08-CV-6210

              v.                                   **DECISION**
                                                   **and ORDER**
YATES COUNTY, YATES COUNTY SHERIFF'S
DEPARTMENT, RONALD G. SPIKE, SHERIFF,
in His Official and Individual Capacity,
INVESTIGATOR CHRISTENSEN, in His Official
and Individual Capacity,

                              Defendants.
_____

## INTRODUCTION

     Plaintiff Kenneth Kamholtz ("plaintiff" and/or "Kamholtz") brings this action pursuant to 42 U.S.C. §1983 against Yates County (the "County"), the Yates County Sheriff's Department ("YCSD"), Sheriff Ronald G. Spike ("Sheriff Spike") and Investigator Michael Christensen ("Christensen") (collectively "defendants"), claiming that his civil rights were violated in connection with his demotion from "Investigator" to "Road Deputy" at the YCSD. Specifically, plaintiff alleges four separate causes of action including: (1) First Amendment retaliation; (2) "Class-of-one" theory of Equal Protection; (3) Malicious Prosecution and (4)Negligent Hiring, Training and Supervision. Plaintiff seeks declaratory relief, injunctive relief, equitable relief, compensatory damages, punitive damages as well as attorney's fees and costs for the deprivation of his civil rights. The County, YCSD and Sheriff Spike move to dismiss plaintiff's Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6), alleging that plaintiff has failed to state a claim upon which relief

may be granted and that they are entitled to a dismissal as a matter of law. In addition, defendant Christensen moves to dismiss Counts I and II of plaintiff's Complaint since he contends that neither cause of action is viable based upon the facts plead by plaintiff. For the reasons set forth below, defendants' motions to dismiss plaintiff's Complaint are granted.

## BACKGROUND

Unless otherwise noted, the following facts are taken from plaintiff's Complaint including documents incorporated by reference or upon which plaintiff relied in drafting the Complaint. Plaintiff was appointed to the Criminal Investigation Division ("CID") of the YCSD and assumed his duties in May 2003. Shortly thereafter, plaintiff alleges that he was ordered by Christensen to change a report to exclude evidence in a sexual abuse case. In the summer of 2003, plaintiff attended a staff meeting during which he complained that Christensen ordered him to alter a police report. According to the Complaint, after the summer 2003 meeting, plaintiff began receiving complaints from management that his case work was flawed and that he was a liability to the YCSD. Plaintiff further alleges that in the late summer 2005, Christensen received officer safety information that he passed on to CID members but excluded plaintiff and as a result plaintiff was disciplined in a Letter of Reprimand.

In August 2006, Christensen and the Yates County District Attorney ("DA") initiated a monthly meeting with members of the CID to discuss cases. Plaintiff alleges that at the conclusion of the

September 2006 meeting, Christensen, suddenly and without provocation "physically struck Plaintiff on the back causing tremendous pain." Plaintiff then filed a worker's compensation claim and a Personnel complaint against Christensen for striking him in the back.[1] See Matthew C. Van Vessem's Affidavit. ("Van Vessem Aff.") at ¶8.  With respect to the alleged injury, plaintiff complains that he was struck at the base of the neck while sitting. See id. at ¶12, Ex. B.

Moreover, plaintiff alleges that Lindenmuth and Sotir provided statements relating to the September 2006 incident. See id. at ¶14, Exs. C and D. However, Lindenmuth's statement appears to contradict plaintiff's statement when she notes that "Christensen had a very calm demeanor, was sort of laughing, and touched Inv. Kamholtz on the left shoulder[.] It appeared to me to be a very collegial type of touch. Inv. Kamholtz did not move, did not flinch, and did not state anything." See id., Ex. C. With respect to Sotir's statement, he noted that it was difficult to describe the physical contact made by Christensen towards plaintiff. He described it as "definitely ... not a 'punch' nor did it impress me as a blow to cause an injury. It was also not what I would describe as a friendly pat on the back, I would characterize it as being somewhere in between the two. My impression was that it was done to end the conversation." See id., Ex. D.

---

[1] The relevant documents, which state that any false statement on the forms are punishable as a criminal matter are signed by plaintiffs. In those same documents, plaintiff identifies as witnesses, attorney Susan H. Lindenmuth ("Lindenmuth") and an Investigator named Todd Sotir ("Sotir").

The Complaint further alleges that plaintiff was arrested and charged in the Penn Yan Village Court with two counts of offering a false instrument. A Section 75 Civil Service Law hearing was also scheduled regarding the administrative charges against plaintiff relating to the same incident. Plaintiff alleges that the criminal charges were dropped but that plaintiff could only return to work as a Road Deputy, which was a demotion from his previously held position of Investigator. See Van Vessem Aff. at ¶16, Ex. E. The demotion to road patrol duties was voluntary on plaintiff's part. See id.

## DISCUSSION

### I.   Defendants' Motion to Dismiss

In considering a motion for dismissal under Rule 12, defendant must show that plaintiff can prove no set of facts in support of her claim that would entitle her to relief. See H.J. Inc. v. Northwest Bell Telephone Co., 492 U.S. 229, 249 (1989); see also 2 MOORE'S FEDERAL PRACTICE, § 12.34[1][a] (Matthew Bender 3d ed.) A complaint may be dismissed pursuant to Rule 12(b)(6) where the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." See Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1974 (2007). As the Second Circuit has recently stated, Twombly requires that a plaintiff satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." See Iqbal v. Hasty, 2007 WL 1717803 at *11 (2d Cir.2007).

In order to state a claim, the factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." See <u>Twombly</u>, 127 S.Ct. at 1965. Where a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." See <u>id.</u> at 1974. "A court should only dismiss a suit under Rule 12(b)(6) if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" See <u>Valmonte v. Bane</u>, 18 F.3d 992, 998 (2d Cir.1994) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). The Court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." See <u>Sheppard v. Beerman</u>, 18 F.3d 147, 150 (2d Cir.1994), citing <u>Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College</u>, 835 F.2d 980, 982 (2d Cir.1987). "Bald assertions and conclusions of law will not suffice" to defeat a motion to dismiss. See <u>Reddington v. Staten Island Univ. Hosp.</u>, 511 F.3d 126, 126 (2d Cir.2007).

In deciding a motion to dismiss under Rule 12(b)(6), the court's review is limited to the Complaint as well as those documents attached to the Complaint or incorporated by reference and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit. See <u>Rothman v. Gregor</u>, 220 F.3d 81, 88-89 (2d Cir.2000); <u>Newman & Schwartz v. Asplundh Tree Expert Co.</u>, 102 F.3d 660, 662 (2d Cir.1996).

## II.  **Plaintiff has failed to state a cause of action relating to First Amendment Retaliation**

The First Amendment protects the right of public employees to speak-out without fear of reprisal on issues of public concern. See Frank v. Relin, 1 F.3d 1317 (2d Cir., 1993), cert. denied, 510 U.S. 1012 (1993); see also Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 780 (2d Cir.1991) (It is well-settled that a public employer may not discharge an employee in retaliation for the exercise of his or her free speech right). However:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency in reaction to an employee's behavior.

Connick v. Myers, 461 U.S. 138, 147 (1983) Moreover, even where an employee has spoken out on matters of public concern, a public employer may still take employment action against the employee if the speech is likely to, or in fact has, disrupted the performance of governmental activities, or is detrimental to governmental efficiency. See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006); Mandell v. Cty. of Suffolk, 316 F.3d 368 (2d Cir. 2003); Connick, 461 U.S. at 140 (While a public employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment," the government, as an employer, has an interest "in promoting the efficiency of the public

services it performs through its employees"). Thus, this Court is charged with the task of balancing these competing interests.

"In order to establish a First Amendment retaliation claim, [a] plaintiff[] must prove that: (1) [he] engaged in constitutionally protected speech because [he] spoke as [a] citizen[] on a matter of public concern; (2) [he] suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." See Woodlock v. Orange Ulster B.O.C.E.S., 281 Fed.Appx. 66, 68, 2008 WL 2415726 at *1 (2d Cir. 2008) (citing Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 106 (2d Cir.2006)); Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir.1996)). Whether or not particular speech relates to a matter of public concern is "ordinarily a question of law decided on the whole record by taking into account the content, form, and context of the given statement." See Melzer v. Bd. of Educ., 336 F.3d 185, 196 (2d Cir. 2003). If the plaintiff is able to establish a prima facie case of retaliation, the court must then determine whether or not the government employer was justified in taking action against the employee. See Garcetti v. Cebballos, 547 U.S. 410 (2006). As stated by the court in McEvoy v. Spencer, 124 F.3d 92, 98 (2nd Cir. 1997):

> In each case, the ultimate question is whether the employee's right to speak is outweighed by the public employer's interest in the effective operation of the workplace. Specifically, a court must assess the extent of the disruption caused by the employee's speech on workplace discipline, harmony among co-workers, working relationships, and the employee's job performance, and determine whether the disruption justifies the employer's attempt to stifle the employee's expressive activity.

Applying the above principles to the instant case, I find that plaintiff's speech during the staff meeting in the summer of 2003 was in relation to the scope of his employment as an Investigator for the YCSD and not protected speech under the <u>Garcetti</u> Court's interpretation of the First Amendment. Even when considering the Complaint in the light most favorable to plaintiff, the allegations show that plaintiff was speaking as an employee and not as a citizen when he complained at the staff meeting in 2003 that Christensen "directed him to withhold exculpatory evidence and alter police records concerning the sexual abuse allegations of a former police officer[.]" <u>See</u> Comp., ¶88. Accordingly, plaintiff was not engaged in protected speech and cannot proceed on a First Amendment retaliation claim. <u>See</u> <u>Ruotolo v. City of New York</u>, 514 F3d 184, 187-88 (2d Cir. 2008).[2] Plaintiff's first cause of action as to all defendants is dismissed.

## III. **Equal Protection: Class-of-One Claim**

The Equal Protection Clause "requires that the government treat all similarly situated people alike." <u>See</u> <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494, 499 (2d Cir.2001); <u>Latrieste Rest. v. Vill. of Port Chester</u>, 188 F.3d 65, 69 (2d Cir.1999) (The Equal Protection Clause is "essentially a direction that all persons similarly situated

---

[2]Defendants County, YCSD and Sheriff Spike alternatively argue that plaintiff's First Amendment retaliation claim should be dismissed as they are time-barred under the applicable statute of limitations. This Court need not address this alternative basis of dismissal since it has dismissed the First Amendment retaliation claim based on the insufficiency of the pleadings in plaintiff's Complaint.

be treated alike") (quoting <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985)). An individual not alleging invidious discrimination on the basis of membership in some group may nevertheless prevail on an equal protection claim under the "class of one" theory recognized by the Supreme Court in <u>Willowbrook v. Olech</u>, 528 U.S. 562 (2000). Under a "class of one" equal protection claim, a plaintiff must show that (1) "[he] has been intentionally treated differently from others similarly situated and" (2) "there is no rational basis for the difference in treatment." <u>See</u> <u>Olech</u>, 528 U.S. at 564; <u>see also</u> <u>Giordano v. City of New York</u>, 274 F.3d 740, 743 (2d Cir.2000).

   <u>Olech</u> involved a regulatory decision by a municipality. In <u>Engquist v. Oregon Dept. of Agriculture et. al.</u>, 128 S.Ct. 2146, 2147 (2008),[3] the Court held that the class of one theory recognized in <u>Olech</u> is not valid in the context of public employment.[4] The Court observed that in the employment context, "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of

---

   [3]The court distinguished <u>Engquist</u> from the "class of one" claim in <u>Olech</u> which, "involved the government's regulation of property." <u>See id.</u> at 2153. Similarly, "the cases upon which the Court in <u>Olech</u> relied concerned property assessment and taxation schemes." <u>See id.</u> The Supreme Court reasoned that because an employer's decisions, "by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments," <u>id.</u> at 2154, a discrimination claim could not be assessed in the same manner as <u>Olech</u>.

   [4]Though "[e]qual protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others,'" <u>Engquist</u>, 128 S.Ct. at 2147 (quoting <u>McGowan v. Maryland</u>, 366 U.S. 420, 425 (1961), the Supreme Court has recognized that the Equal Protection Clause "protect[s] persons, not groups." <u>See</u> <u>Adarand Constructors, Inc. v. Pena</u>, 515 U.S. 200, 227 (1995).

the discretion granted [the employer]." <u>See</u> <u>id.</u> Thus, a public employee like the plaintiff who does not contend that he is being subjected to invidious discrimination based upon membership in a protected class and rather believes he has been mistreated due to personal malice on the part of a supervisor may no longer proceed on a class of one theory. <u>See</u> <u>id.</u> at 2149; <u>see</u> <u>also</u> <u>Appel v. Spiridon</u>, 531 F.3d 138, 141 (2d Cir.2008).

In short, the class-of-one theory of equal protection is unavailable to public employees. <u>See</u> <u>Appel</u>, 531 F.3d at 138; <u>Clayton v. City of Middletown</u>, 564 F.Supp.2d 105, 114-15 (D.Conn. 2008). This case falls squarely within the ambit of the <u>Engquist</u> decision, and plaintiff's equal protection claim is no longer viable. Therefore, plaintiff's second cause of action fails as a matter of law.

Plaintiff argues that he is not alleging a "class-of-one" equal protection violation under <u>Olech</u>, but rather a traditional selective enforcement claim. See Pl. Br. at 15. In <u>LeClair v. Saunders</u>, 627 F.2d 606, 609 (2d Cir. 1980) the Second Circuit provided an equal protection argument whereby a plaintiff may bring an equal protection claim by demonstrating "selective prosecution." To succeed in an equal protection action based upon a selective prosecution, plaintiffs in this circuit must show both "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

person." See Harlen Assocs., 273 F.3d at 499 (internal quotation marks omitted); see also LeClair, 627 F.2d at 609-10. The Second Circuit has warned, though, that "cases predicating constitutional violations on selective treatment motivated by ill-will, rather than by protected-class status or an intent to inhibit the exercise of constitutional rights, are lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply." See Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir.2005) (internal quotation marks omitted). Indeed, the Second Circuit has "frequently referred to the LeClair formulation in [this] circuit, ... but rarely [has] found a constitutional violation." See id. (collecting cases).

Given the Supreme Court's decision in Engquist, whether a LeClair selective prosecution claim in the public employment context can survive is doubtful. The Second Circuit has styled the LeClair selective prosecution theory as a species of class-of-one equal protection, and has even cited to Olech to "affirm[ ] the validity of such ... claims...." See Harlen Assocs., 273 F.3d at 499. The court discussed Engquist above, and need not repeat itself here. Needless to say, the Supreme Court found that the class-of-one theory of equal protection does not apply in the public employment context. In the Court's view, this would apply not only to Olech class-of-one claims, but also to LeClair selective prosecution claims. Thus, the Plaintiff's claim here would be precluded, and the motions to dismiss in favor of the defendants are granted.

Even if _Engquist_ did not apply to the plaintiff's _LeClair_ selective prosecution claim, his claim would nonetheless fail as a matter of law. Plaintiff has failed to compare himself to a similarly situated employee for the purposes of his selective prosecution equal protection claim. As Courts in this Circuit have held "demonstrating that a plaintiff has been treated differently from similarly situated individuals is 'the _sine qua non_ of a _LeClair_ selective enforcement violation.'" _See_ Goldfarb v. Town of West Hartford, 474 F.Supp.2d 356, 368 (quoting John Doe No. 1 v. Vill. of Mamaroneck, 462 F.Supp.2d 520, 555 (S.D.N.Y.2006)). The similarly situated standard here is the same as that for _Olech_ class-of-one claims. "[T]he level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." _See_ Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005). "[T]he standard for determining whether another person's circumstances are similar to the plaintiff's must be ... whether they are prima facie identical." _See_ id. at 105 (internal quotation marks omitted); see also Goldfarb, 474 F.Supp.2d at 366-67; Inturri v. City of Hartford, 365 F.Supp.2d 240, 251 (D.Conn.2005) (holding that, to be considered similarly situated, "employees must be similarly situated in all material respects").

The Plaintiff has not met this standard. To support his claim, the plaintiff was required to demonstrate that he was treated differently from other employees who were similarly situated to him in all material respects. Here, plaintiff offers no comparison to any similarly situated employees who have been treated differently from

him. Accordingly, plaintiff's <u>LeClair</u> selective prosecution claim fails. Thus, defendants' motions to dismiss plaintiff's second cause of action is granted.

### IV.  **Malicious Prosecution**

The legal principles concerning a claim for malicious prosecution are well-settled:

> In order to establish a claim for malicious prosecution under section 1983, a plaintiff must also allege all of the elements of malicious prosecution under state law. Under New York law, to prevail on a claim of malicious prosecution, a plaintiff must show: "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.

See <u>Williams v. City of New York</u>, 2007 WL 2214390 at *5 (S.D.N.Y. 2007) (Footnotes and internal quotation marks omitted); <u>see also</u> <u>Ricciuti v. N.Y.C. Transit Authority</u>, 124 F.3d 123, 130 (2d Cir.1997). For purposes of malicious prosecution, "[p]robable cause is defined as such facts and circumstances as would lead a reasonable prudent person in like circumstances to believe plaintiff guilty." <u>See</u> <u>id.</u> at *6 (footnote and internal quotation marks omitted).

In the instant case, defendants maintain that they are entitled to a motion to dismiss because they had probable cause to arrest and prosecute plaintiff with two counts of offering a false instrument. Based on the allegations in the Complaint and the documents attached by reference, the Court agrees. Plaintiff alleges that at the conclusion of the September 2006 meeting, Christensen, suddenly and

without provocation "physically struck Plaintiff on the back causing tremendous pain." Plaintiff then filed a worker's compensation claim and a Personnel complaint against Christensen for striking him in the back. With respect to the alleged injury, plaintiff complains that he was struck at the base of the neck while sitting. Moreover, plaintiff alleges that Lindenmuth and Sotir provided statements relating to the September 2006 incident.

However, Lindenmuth's statement appears to contradict plaintiff's statement when she notes that "Christensen had a very calm demeanor, was sort of laughing, and touched Inv. Kamholtz on the left shoulder[.] It appeared to me to be a very collegial type of touch. Inv. Kamholtz did not move, did not flinch, and did not state anything." In addition, Sotir's statement noted that it was difficult to qualify the physical contact made by Christensen towards plaintiff. He described it as "definitely ... not a 'punch' nor did it impress me as a blow to cause an injury. It was also not what I would describe as a friendly pat on the back, I would characterize it as being somewhere in between the two. My impression was that it was done to end the conversation." The allegations in the Complaint together with the documents relied on demonstrate that defendants had probable cause to arrest and prosecute plaintiff. In response, plaintiff has failed to sufficiently allege a lack of probable cause for his arrest for filing a false instrument.

Further, plaintiff contends that the Complaint alleges that plaintiff's prosecution for offering a false instrument was terminated

in favor of the plaintiff in that the charges were dismissed. <u>See</u> Compl., ¶98. Defendants responds by stating that plaintiff fails to sufficiently allege that the proceeding was terminated in his favor. <u>See</u> Defs. Br. at 7. In a malicious prosecution action, a plaintiff must allege that the criminal proceeding terminated in favor of the accused. <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477, 484 (1994). In the absence of an acquittal, there can be no favorable termination unless the matter is disposed of in a manner that suggests the plaintiff's innocence. <u>See</u> <u>Fulton v. Robinson</u>, 289 F.3d 188, 196 (2d Cir. 2002). "Similarly, as to other types of nonadjudicative resolutions, 'if the outcome was the result of a compromise to which the accused agreed, or an act of mercy requested or accepted by the accused,... it is not a termination in favor of the accused for purposes of a malicious prosecution claim.'" <u>See</u> <u>id.</u>

In the instant case, there was no acquittal. Plaintiff alleges that the criminal charges were dropped but that plaintiff could only return to work as a Road Deputy, which was a demotion from his previously held position of Investigator. The demotion to road patrol duties was voluntary on plaintiff's part. Notably, the outcome of dropping the charges with plaintiff accepting a demotion, shows a "compromise to which the [plaintiff] agreed, ... [which] is not a termination in favor of the [plaintiff] for purposes of a malicious prosecution claim." <u>See</u> <u>Fulton</u>, 289 F.3d at 196. In addition, taking plaintiff's allegations as true for purposes of this motion, dropping the charges when plaintiff accepts a voluntary demotion, is not a

favorable decision on the merits. Such a dismissal does not suggest that plaintiff is innocent of the charges. Therefore, plaintiff has failed to sufficiently allege that the criminal proceeding terminated in his favor and thus cannot state a claim for malicious prosecution, and accordingly this claim is dismissed.[5]

### V.    Municipal Liability under 42 U.S.C. § 1983

Plaintiff alleges that Sheriff Spike had knowledge, through the chain of command of plaintiff's complaints concerning Christensen since 2003. See Compl., ¶103. In addition, plaintiff claims that the County had an "established policy or custom of encouraging its employees to engage in retaliatory conduct." See id., ¶112. A plaintiff who seeks to recover against a municipality under §1983 must show that the violation of his constitutional rights resulted from a municipal policy or custom. See Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 694 (1978); Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir.2004). This analysis applies equally to individual defendants who are sued in their official capacity, as "[a]n official capacity suit against a public servant is treated as one against the governmental entity itself." See Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir.2007). "To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal

---

[5]Moreover, the plaintiff has failed to allege facts to support the element of malice. The Second Circuit has defined malice as a "wrong or improper motive, something other than a desire to see the ends of justice served." See Fulton, 289 F.3d at 198. Here, the Complaint is devoid of any facts that suggest malice. The Complaint merely states that the claim for offering a false instrument "was brought with malice" but provides no factual basis for that assertion. See Compl.,¶ 98.

policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's [rights]; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." See Prowisor v. Bon-Ton, Inc., 426 F.Supp.2d 165, 174 (S.D.N.Y.2006).

Plaintiff has not alleged the existence of a formal policy. "The policy or custom need not be memorialized in a specific rule or regulation." See Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir.1996) (citing Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir.1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" See Patterson, 375 F.3d at 226 (quoting Kern, 93 F.3d at 44). However, a municipal entity may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a respondeat superior theory." See Monell, 436 U.S. at 691; see also Segal v. City of New York, 459 F.3d 207, 219 (2d Cir.2006) ("Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal

organization where that organization's failure to train, or the policies or customs it has sanctioned, led to an independent constitutional violation.")

In the instant case, since the Court finds as a matter of law on a motion to dismiss that no constitutional violation was committed against plaintiff by the individual defendants, see supra, then no Monell claim can lie against the County pursuant to § 1983.[6] See e.g. Segal, 459 F.3d at 219 ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct."); accord Vippolis v. Haverstraw, 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, ... the 'person who...subjected, or cause[d][him] to be subjected,' to the deprivation of his constitutional rights.") (citing 42 U.S.C. § 1983). In addition, plaintiff has failed to show any connection between the County, Sheriff Spike and any adverse treatment he may have suffered. The Complaint merely speculates that Sheriff Spike knew about a deprivation of plaintiff's constitutional rights "based on information and belief." Such "information and belief" fails to show any deliberate indifference by the County. Therefore, to the extent plaintiff is attempting to assert a Monell claim against the County

---

[6]In any event, a motion to dismiss would also be warranted in the County's favor because plaintiff has failed to proffer any evidence of a policy, custom, or failure to train, that led to any alleged constitutional violation. Similarly, any claims against Sheriff Spike based on his supervision of Christensen also do not survive a motion to dismiss because Christensen committed no constitutional violations as a matter of law.

and Sheriff Spike, the Court grants defendants' motion to dismiss as to such claims.[7]

## VI.   Claims Against the Yates County Sheriff's Department

The defendants seek dismissal of the Complaint against the YCSD on the ground that a municipality's police department is considered an administrative unit of the County of Yates and not a separate legal entity subject to suit. See Defs. Br. at 10. Plaintiff has not addressed this contention in his response.

It is well settled that, under New York law, "departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." See Caidor v. M & T Bank, 2006 WL 839547, at *2 (N.D.N.Y. March 27, 2006) (quoting Hall v. City of White Plains, 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)); see also Baker v. Willett, 42 F.Supp.2d 192, 198 (N.D.N.Y.1999). Accordingly, since the YCSD is merely an administrative arm of the County, the claims against the YCSD must be dismissed. See Willard v. Town of Hamburg, 1996 WL 607100, at *1 (W.D.N.Y. 1996) (dismissing the claims against the Police Department and the Town Board because neither "exist separate and apart from the Town and [they] do not have their own legal identities").

---

[7]Likewise, with regard to Sheriff Spike, to the extent that he is being sued in his official capacity, the claim against him is duplicative of the Monell claim against the County. See Tsotesi v. Bd. of Educ., 258 F.Supp.2d 336, 338 n. 10 (S.D.N.Y.2003) (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)); see also Monell, 436 U.S. at 691 (holding that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Therefore, the Monell claims against Sheriff Spike in his official capacity also does not survive a motion to dismiss.

### VII. **Qualified Immunity**

The qualified immunity defense shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once the defendants claim the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendants are not entitled to qualified immunity. See Myers v. Potter, 422 F.3d 347, 352 (6th Cir.2005).

In determining whether qualified immunity applies, the court must first consider whether "the facts alleged show the [official's] conduct violated a constitutional right." See Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir.1994); Kerman v. City of New York, 374 F.3d 93, 108 (2d Cir.2004). In the alternative, under the qualified immunity doctrine, a government official is shielded from liability for civil damages from his performance of discretionary functions so long as his actions would have been "objectively reasonable for the official to believe his conduct did not violate plaintiff's rights." See Savino v. City of New York, 331 F.3d 63, 72 (2d. Cir. 2003). If the plaintiff establishes that such a violation occurred, the court will examine "whether the right was clearly established ... in light of the specific context of the case, not as a broad general proposition." See Saucier, 533 U.S. at 201. A plaintiff may show that a right is

"clearly established" by: (1) identifying analogous case law establishing the right; or (2) showing that the conduct was "so egregious" that no reasonable person could have "believed that it would not violate clearly established rights." See Hope v. Pelzer, 536 U.S. 730, 739 (2002); U.S. v. Lanier, 520 U.S. 259, 265 (1997).

Defendants claim that Sheriff Spike is entitled to qualified immunity since plaintiff has not alleged any clearly established statutory or constitutional right violated by Sheriff Spike under the factual allegations of this case. See Defs. Br. at 11. Based on the facts alleged in the Complaint, plaintiff has failed to demonstrate that Sheriff Spike violated clearly established rights or acted unreasonably in this situation. The Complaint claims that "on information and belief, Sheriff Spike ... agreed to, approved, and ratified this unconstitutional conduct by ... Christensen." See Compl., ¶111. However, the Complaint offers no showing regarding these claims, and as such, the allegations against Sheriff Spike are dismissed.

In addition, plaintiff must show that an official was personally involved in any alleged constitutional violation. Merely stating a supervisory role is not enough to show personal involvement. See Bowen v. County of Allegany, 2004 WL 1588213, at *4 (W.D.N.Y. 2004) ("A plaintiff cannot 'base liability solely on [a defendant's] supervisory capacity or the fact that he held the highest position of authority' within the relevant governmental agency or department.") (citing Houghton v. Cardone, 295 F.Supp.2d 268, 276 (W.D.N.Y.2003) and quoting

Burgess v. Morse, 259 F.Supp.2d 240, 248 (W.D.N.Y. 2003)). Here, plaintiff fails to allege any personal involvement on behalf of Sheriff Spike. Merely using his position of authority to support liability does not create a cognizable claim. Thus, Sheriff Spike is entitled to qualified immunity for any claims against him.

<u>**CONCLUSION**</u>

For the reasons set forth above, I grant the motions to dismiss brought by defendant Christensen and defendants Yates County, Yates County Sheriff's Department and Sheriff Spike, and dismiss plaintiff's Complaint in its entirety.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
December 3, 2008